PEOPLE v CLARK

Docket No. 68962. Submitted January 11, 1983, at Lansing.—Decided July 11, 1983.

Dean L. Clark was convicted of armed robbery following a jury trial in Oakland Circuit Court, Richard D. Kuhn, J. At trial, defendant testified. The prosecution thereafter wished to offer in rebuttal the testimony of a police officer relative to statements made by the defendant to the officer at the time of his arrest which were at variance with the testimony given by defendant at trial. The statements of defendant had been made after defendant had been advised of his rights, had acknowledged understanding of those rights, and had indicated that he wished to speak to an attorney before answering any questions. Following an evidentiary hearing, the trial court determined that the prosecution could utilize the testimony relative to defendant's statements for impeachment purposes. Defendant appealed and the Court of Appeals affirmed. Docket No. 48218, unpublished opinion of February 12, 1981. Defendant sought leave to appeal to the Supreme Court. In lieu of granting leave to appeal, the Supreme Court vacated the judgment of the Court of Appeals and remanded the case to the Court of Appeals "for reconsideration in light of *People v Paintman,* 412 Mich 518 (1982), and *Edwards v Arizona,* 451 US 477; 101 S Ct 1880; 68 L Ed 2d 378 (1981)". 417 Mich 851 (1982). *Held:*

The testimony relative to the statements made by defendant was properly admitted for impeachment purposes. The Supreme Court of the United States has held that a statement which is voluntarily given may be used for impeachment purposes even if such statement is not admissible in the prosecution's case in chief by reason of being secured after the invoking of the right to consult an attorney. There is no

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 29 Am Jur 2d, Evidence § 556.

[1] 81 Am Jur 2d, Witnesses §§ 527, 596 *et seq.*

Propriety of using otherwise inadmissible statement, taken in violation of Miranda rule, to impeach criminal defendant's credibility —state cases. 14 ALR4th 676.

[2] 16 Am Jur 2d, Constitutional Law § 13.

controlling authority holding that the Michigan Constitution requires more than the federal constitution as interpreted by the United States Supreme Court.

Affirmed.

1. CRIMINAL LAW — IMPEACHMENT — VOLUNTARY STATEMENTS.

A voluntary statement by a defendant which is not admissible in the case in chief because it was made during interrogation initiated by a police officer after the defendant had requested a lawyer may be used to impeach the defendant's testimony at his trial.

2. CONSTITUTIONAL LAW — SUPPRESSION OF EVIDENCE — MICHIGAN CONSTITUTION — FEDERAL CONSTITUTION.

There is no binding authority holding that the Michigan Constitution requires exclusion from evidence of voluntary statements made by a criminal defendant after he had requested an attorney where such statements would be admissible under the federal constitution as interpreted by the United States Supreme Court.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *Richard H. Browne,* Assistant Prosecuting Attorney, for the people.

*Keller & Avadenka, P.C.* (by *Frances R. Avadenka),* for defendant.

Before: D. E. HOLBROOK, JR., P.J., and M. J. KELLY and MACKENZIE, JJ.

MACKENZIE, J. After a jury trial, defendant was convicted of armed robbery, MCL 750.529; MSA 28.797. Defendant was sentenced to imprisonment for 20 to 60 years and appealed by right. This Court affirmed defendant's conviction, Docket No. 48218, unpublished opinion of February 12, 1981, and defendant filed with the Supreme Court a letter application for review of his conviction pursuant to Administrative Order 1977-4, 400 Mich

lxvii. In lieu of granting leave to appeal, the Supreme Court vacated this Court's judgment and remanded the case to this Court for reconsideration in light of *People v Paintman,* 412 Mich 518; 315 NW2d 418 (1982), and *Edwards v Arizona,* 451 US 477; 101 S Ct 1880; 68 L Ed 2d 378 (1981). 417 Mich 851 (1982).

At issue is testimony concerning statements defendant made to the police which were admitted, not in the prosecution's case in chief but in rebuttal, to impeach defendant's credibility by showing that he made prior statements inconsistent with his testimony. It is well-settled that, even assuming that the statements were obtained in violation of the rule stated in *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966), the statements could be used for impeachment purposes. *Harris v New York,* 401 US 222; 91 S Ct 643; 28 L Ed 2d 1 (1971); *Oregon v Hass,* 420 US 714; 95 S Ct 1215; 43 L Ed 2d 570 (1975). However, in *People v Esters,* 417 Mich 34; 331 NW2d 211 (1982), a case affirmed by an equally divided Court, three justices declined to apply *Harris* and *Hass* to a violation of the rule stated in *Paintman* and *Edwards.*

## I

In his opinion for reversal in *Esters, supra,* Justice WILLIAMS drew the following distinction:

"In *Harris, supra,* the Supreme Court allowed a statement made by a defendant who had not been advised of his right to appointed counsel in violation of *Miranda* to be used for impeachment purposes. Unlike *Harris,* the *Edwards* decision concerned a defendant who had not only been advised of his *Miranda* rights, but who had invoked his right to have counsel present. *Harris* is therefore distinguished." 417 Mich 63.

However, this distinction was rejected in *Oregon v Hass.* See, for example, the Court's statement of the issue:

"This case presents a variation of the fact situation encountered by the Court in *Harris v New York,* 401 US 222 (1971): When a suspect, who is in the custody of a state police officer, has been given full *Miranda* warnings and accepts them, and then later states that he would like to telephone a lawyer but is told that this cannot be done until the officer and the suspect reach the station, and the suspect then provides inculpatory information, is that information admissible in evidence solely for impeachment purposes after the suspect has taken the stand and testified contrarily to the inculpatory information, or is it inadmissible under the Fifth and Fourteenth Amendments?" (Footnote omitted.) 420 US 714-715.

Like Edwards, Hass had invoked his right to counsel. See also *Mincey v Arizona,* 437 US 385, 397-403; 98 S Ct 2408; 57 L Ed 2d 290 (1978). For a recent decision in which defendant's statements were held admissible for impeachment purposes despite a violation of the *Edwards* rule, see *United States v Hinckley,* 672 F2d 115, 118, 134, fn 119 (CA DC, 1982). For other cases in which defendant's statements were held admissible for impeachment purposes despite violations of defendant's right to counsel, see *United States v Frank,* 520 F2d 1287, 1291 (CA 2, 1975), *United States v Taxe,* 540 F2d 961, 968-969 (CA 9, 1976), *United States v McManaman,* 606 F2d 919, 924-925 (CA 10, 1979), *People v Ricco,* 56 NY2d 320; 452 NYS2d 340; 437 NE2d 1097 (1982), and *State v Cody,* 323 NW2d 863 (SD, 1982).

Moreover, the *Harris* decision placed considerable reliance on *Walder v United States,* 347 US 62; 74 S Ct 354; 98 L Ed 503 (1954), a case in which

the Court held that evidence obtained as the result of an illegal search and seizure was admissible for impeachment purposes. The use of this analogy in *Harris* suggests that the *Harris* rule is to be construed broadly.

In his opinion for reversal in *Esters, supra,* p 64, Justice WILLIAMS also attempted to distinguish *Harris* from *Edwards* on the baiss of the following language in *Edwards, supra,* 451 US 484:

"*Schneckloth [v Bustamonte,* 412 US 218, 226; 93 S Ct 2041; 36 L Ed 2d 854 (1973)] itself thus emphasized that the voluntariness of a consent or an admission on the one hand, and a knowing and intelligent waiver on the other, are discrete inquiries. Here, however sound the conclusion of the state courts as to the voluntariness of Edwards' admission may be, neither the trial court nor the Arizona Supreme Court undertook to focus on whether Edwards understood his right to counsel and intelligently and knowingly relinquished it. It is thus apparent that the decision below misunderstood the requirement for finding a valid waiver of the right to counsel, once invoked."

This language from *Edwards* does not support a conclusion that *Harris* and *Hass* do not apply when the rule stated in *Edwards* is violated. In *Edwards,* the lower courts erred by holding that defendant's statement was admissible because it was voluntary without regard to whether defendant's waiver of the right to counsel was voluntary, but it is the voluntariness of defendant's statement which determines whether it is admissible under *Harris* and *Hass* for impeachment purposes. See *Mincey v Arizona, supra.*

In view of the foregoing, we agree with Justice COLEMAN, who held in her opinion in *Esters, supra,* that *Harris* and *Hass* apply as a matter of federal constitutional law to statements obtained

in violation of the rule stated in *Edwards* and
*Paintman.*

## II

Justices KAVANAGH and LEVIN stated that they
would, on Michigan constitutional grounds, join in
the conclusion reached by Justice WILLIAMS. Be-
cause the opinion of Justice WILLIAMS contains no
reference to the Michigan Constitution or to any
case decided on Michigan constitutional grounds, it
is not clear whether Justice WILLIAMS shares their
view of the Michigan Constitution. However, as
only three justices at the most have adopted this
view of the Michigan Constitution, no binding
precedent has been established.

*Harris* and *Hass* state an exception to the fed-
eral constitutional rule established in *Miranda*
and explained and refined in *Edwards.* There is no
authority holding that the Michigan Constitution
requires the results reached in *Miranda* and *Ed-
wards.* See *People v Belanger,* 120 Mich App 752,
761; 327 NW2d 554 (1982). Absent such authority,
it is difficult to understand how the Michigan
Constitution can require an exception to the rule
stated in *Harris* and *Hass* for statements obtained
in violation of the rule stated in *Edwards.*

In *Harris, supra,* 401 US 225-226, the Court
explained its reasoning as follows:

"The impeachment process here undoubtedly pro-
vided valuable aid to the jury in assessing petititoner's
credibility, and the benefits of this process should not
be lost, in our view, because of the speculative possibil-
ity that impermissible police conduct will be encour-
aged thereby. Assuming that the exclusionary rule has
a deterrent effect on proscribed police conduct, suffi-
cient deterrence flows when the evidence in question is
made unavailable to the prosecution in its case in chief.

* * *

"The shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances."

We see nothing in the Michigan Constitution which casts doubt on the validity of this reasoning. We see nothing in the Michigan Constitution or in *Edwards* which suggests a reason for a different result when the *Edwards* rule is violated. Accordingly, we find that the use of defendant's prior inconsistent statement for impeachment purposes was not error.

Affirmed.